OPINION OF THE COURT
Robert G. Main, Jr., J.
Preserve Associates, LLC (hereinafter respondent), commenced proceedings pursuant to Highway Law § 300 et seq., by filing an application for the opening of a private road across the lands of The Nature Conservancy, Inc. (hereinafter petitioner), in order to enable respondent to access a parcel of real property, known as the Moody Pond Parcel, in Tupper Lake. Petitioner opposed the application. Pursuant to statute, respondent and petitioner presented witnesses and evidence to a jury comprised of Tupper Lake residents (see Highway Law §§ 301, 304-306). Upon completion of the hearing, after due deliberation, the jury *305 found the proposed road to be necessary and awarded petitioner damages.
Petitioner now moves, pursuant to Highway Law § 312, to vacate or, in the alternative, to modify, the jury determination in this matter. Respondent opposes the relief requested and has cross-moved for an order confirming the verdict of the jury.
Procedural History
Respondent sent an application, dated March 18, 2010, to the Superintendent of Highways for the Town of Tupper Lake. This application requested the opening of a private road, 50 feet wide and 400 feet long, across an existing crossing. Respondent’s Lake Simond Road Extension crosses a strip of property owned by petitioner, referred to in these proceedings as “the Road Parcel.” It is at this existing crossing that respondent seeks a private road to furnish access to its approximately 1,282-acre property, the Moody Pond Parcel.
The Moody Pond Parcel is part of a proposed resort development commonly referred to as the Adirondack Club Project. Respondent is currently a purchaser under contract with the Oval Wood Dish Corporation Liquidating Trust (hereinafter Oval Wood Dish), to purchase approximately 5,800 acres to be utilized for the Adirondack Club Project. The Moody Pond Parcel makes up approximately 1,282 acres of this proposed purchase.
Respondent’s application triggered proceedings under an ancient and archaic provision of the Highway Law which is unique and rarely utilized.[2] On September 7, 8, and 9, 2010, a jury of 12 residents of the Town of Tupper Lake was formed, and a jury trial was conducted. Pursuant to article XI of the Highway Law, no judge presided over the trial. The parties, through counsel, stipulated to procedures to be followed during the proceedings. Witnesses testified, evidence was presented, and the jury viewed the site of the road proposed by respondent.
At the conclusion of the proceedings, the jury voted and, accordingly, filled in not one, but two, verdict sheets. Counsel for the parties had been unable to agree on the form and substance *306 of a verdict sheet to present to the jury, so each side presented its own. The jury determined that it was necessary for respondent to lay a private road over petitioner’s property and assessed the damages for doing so in the amount of $10,000. The jury also determined, pursuant solely to respondent’s verdict sheet, that respondent could install an underground electric line beneath the private road.
Petitioner now brings this application, pursuant to Highway Law § 312, which provides, in part, that
“[wjithin thirty days after the decision of the jury shall have been filed in the town clerk’s office, the owner, occupant or applicant may apply to the county court wherein such private road is situated, for an order confirming, vacating or modifying their decision; and such court may confirm, vacate or modify such decision as it shall deem just and legal.”
Petitioner has filed a “Notice of Motion, Notice of Appeal and Application” with supporting affidavit and memorandum of law. Respondent filed an affidavit in opposition and a notice of cross motion and memorandum of law in support of both. In response, counsel for petitioner filed a reply memorandum of law. On January 20, 2011, counsel for both parties appeared before this court and oral argument was heard. This court then received correspondence dated January 21, 2011 from counsel for respondent correcting a citation made during oral argument.
Petitioner alleges, first, that respondent failed to establish that a private road was necessary. It further claims that the jury lacked the authority to grant respondent the right to lay an underground electric line and, lastly, that the entire verdict should be vacated due to numerous procedural and legal errors committed by respondent at trial. In its cross motion, respondent seeks an order of this court confirming the jury verdict rendered on September 9, 2010.
There is no question that this court has jurisdiction to entertain the applications. As a preliminary matter, the court will consider only the motion and cross motion as there is no provision for an “appeal” from such a jury determination. The statute confers upon this court the authority to decide this application upon such terms “as it shall deem just and legal” (Highway Law § 312). As can be seen upon review, the statute and related case law provide very little guidance for the court.
The court will address each prong of petitioner’s motion and, in so doing, touch upon the response of the respondent, as needed.
*307 I. Respondent Failed to Prove Necessity
a. Respondent Failed to Prove no Easement Rights Exist
Petitioner argues that respondent failed to meet its burden of proving that the requested road is necessary in order to provide access to the Moody Pond Parcel. First, petitioner argues that such a road is not necessary until the respondent can show that a recorded 1920 right of way does not provide access to the Moody Pond Parcel.
Both parties acknowledge that in 1920 Oval Wood Dish transferred property to the petitioner’s predecessor in title. In this deed, Oval Wood Dish retained a right to cross the 400-foot-strip of land across which respondent now wishes to place a road. Years later a dispute arose between Oval Wood Dish and petitioner’s predecessor in title regarding the 1920 crossing rights. This dispute was settled by way of a 1991 stipulation which required the crossing to be surveyed and a subsequent written agreement which was to be entered into and filed. It does not appear, however, that such a subsequent survey or agreement were ever filed.
Petitioner argues that respondent cannot show necessity for the private road under the Highway Law until respondent can show that the crossing rights in the 1920 deed do not provide legal access to the Moody Pond Parcel. Further, petitioner believes that the issue of the 1920 crossing rights does not belong in a Highway Law article XI proceeding but, rather, in a Real Property Actions and Proceedings Law article XV proceeding before a judge. In petitioner’s counsel’s memorandum of law, counsel argues that “[s]ince R.PA.PL. Article 15 provides the forum for these decisions, not Article 11, any Article 11 jury encountering these issues would be unqualified to determine necessity until the legal questions are resolved.”
As such, petitioner urges this court to vacate the jury’s determination in this matter, arguing that it was the wrong forum. Respondent argues that the proceedings before the jury in this matter were appropriate and that the jury was presented with evidence on this issue from both parties.
This issue was, in fact, presented to the jury in the instant matter. Several witnesses were questioned regarding their knowledge and understanding of the 1920 crossing. In fact, petitioner presented proof to the jury that prior to the instant proceedings, respondent took the position that it had every right to utilize the crossing in the 1920 deed (see petitioner’s ex *308 hibit B, The Adirondack Club and Resort Adirondack Park Agency permit application [portion thereof]; petitioner’s exhibit D, Sept. 24, 2008 mem from M.D. Foxman to M. Carr). As such, petitioner argues that respondent cannot now claim, with any sincerity, necessity.
Likewise, respondent presented proof to the jury that, prior to these proceedings, petitioner took the position that respondent had no existing right whatsoever to cross over petitioner’s property and into the Moody Pond Parcel. (See respondent’s exhibit 24, June 22, 2010; affidavit of James E. Cullum, Esq. in separate Supreme Court proceedings.) Upon their appearance before the jury in these proceedings, it appears that both respondent and petitioner changed their positions regarding the existence of a preexisting right to cross.
This court is not persuaded by petitioner’s argument that it was improper to utilize the Highway Law article XI jury trial in this matter. It has been held that in Highway Law § 300 et seq. proceedings, “[t]he question of whether the applicants have other rights of way or easements which provide access to their property is also a matter which [respondent] herein must bring to the jury’s attention. Such evidence would have an important bearing on the factual question of the road’s necessity” (Matter of Pratt v Allen, 116 Misc 2d 244, 248 [1982]; see Matter of Siwula v Town of Hornellsville, 56 AD3d 1253 [2008]).
Both parties were provided with an opportunity to present evidence surrounding the crossing rights contained in the 1920 deed and what transpired thereafter. All of this evidence was properly placed before the jurors for their consideration. The jury heard the witnesses and reviewed the documentary evidence and determined, by a preponderance of the evidence, that respondent proved its case for necessity. Their determination will not be disturbed on this basis.
b. Respondent Failed to Prove That the Moody Pond Parcel is Inaccessible by Navigable Waterway
The next prong of petitioner’s application contends that respondent failed to prove necessity in failing to prove that the Moody Pond Parcel cannot be accessed by water. More specifically, petitioner argues that the Moody Pond Parcel can be accessed by the Raquette River. A review of the transcript of the jury trial, as well as of all of the trial exhibits, reveals that respondent presented sufficient proof for the jury to determine that the Raquette River does not provide sufficient access to its property. The jury’s determination will not be disturbed on this basis.
*309 II. The Jury Lacked the Authority to Grant Respondent the Right to Lay an Underground Electric Line
Petitioner next argues that the jury had no authority to grant respondent the right to lay utility lines under the private road. First, petitioner claims that utility lines should not have been considered by the jury because they were not included in respondent’s application but were simply inserted into respondent’s verdict sheet. Petitioner is correct that this issue was not raised in the application submitted to the Superintendent of Highways of the Town of Tupper Lake. The court finds no error with this. The application was proper and sufficient under the statute (see Highway Law § 300; Matter of Siwula v Town of Hornellsville, 56 AD3d 1253 [2008]; Satterly v Winne, 101 NY 218 [1886]).
The insertion of the issue of electric lines in the verdict sheet was not the first time the issue was raised during the proceedings before the jury. This issue was presented to the jury. That being said, this court is not persuaded that it was appropriate to present this issue to the jury or that the jury had the authority to grant such a right.
Petitioner argues that the jury had no authority to permit the laying of electric lines whether above or below the private road that was granted. Counsel for petitioner provides in his memorandum of law that “[t]he right to lay electric lines is not embodied within the term ‘private road’ and cannot be otherwise implied from Article 11, and nothing in the language of Article 11 even hints at granting anything other than a private road across lands of another.”
This court agrees and is not persuaded by respondent’s arguments to the contrary. Respondent’s argument that it could have acquired fee title to the property at issue is unpersuasive as is its argument that the common law does not prohibit utilities in a private road. Highway Law § 314 provides, in part, that “[e]very such private road, when so laid out, shall be for the use of such applicant, his heirs and assigns; but not to be converted to any other use or purpose than that of a road.”
This court is not willing to make the enormous leap which respondent encourages. Simply put, the language of the statute at issue must be strictly construed, and this court is not willing to read language into the statute which the legislature did not see fit to include. The court concedes that there is little case law available dealing with article XI of the Highway Law, in general, *310 and nothing at all on this particular issue. This court is unwilling to create and provide greater rights to respondent than the legislature has, to date, deemed necessary.
As such, this court finds that the jury lacked the authority to grant respondent the right to lay underground electric lines beneath the private road. Accordingly this part of the jury’s verdict will be vacated.
III. Entire Verdict Should be Vacated Due to Procedural and Legal Errors Committed by Respondent
a. Respondent Improperly Shifted Burden of Proof during Its Closing Argument
At the outset, the court notes that it has scoured every page of the transcripts of the proceedings before the jury. A jury trial in proceedings other than this are always presided over by a judge who ensures an orderly, civil presentation of evidence while rendering a multitude of decisions on such issues as evidence and procedure. This court is certain that presenting this matter to a jury, without the presence of a judge, was novel, difficult, and frustrating to counsel for both parties. The transcripts reveal that counsel did a commendable job of controlling themselves, and their witnesses, in front of the jury. That being said, neither was perfect.
Here, petitioner argues that respondent had the burden of proving the necessity of the private road requested in its application. Pointing to the transcript of the proceedings before the jury, petitioner accuses counsel for respondent of confusing the jury by implying that the burden of proof rested with petitioner. This court, based upon a review of the papers now before it, as well as the transcript of the proceedings before the jury, finds this argument to be without merit.
b. Respondent Improperly Added the Laying of Electric Lines in Its Verdict Sheet
Petitioner objects to the fact that respondent included language in its verdict sheet which provided for the laying of electric lines under the private road. With no judge present at the trial, petitioner had no contemporaneous remedy with regard to this issue. The court agrees with petitioner, as discussed above, that the issue of electric lines should not have been presented to the jury. The court does not, however, find any harm in this improper addition to the verdict sheet.
Both parties provided verdict sheets to the jury. Petitioner’s verdict sheet made no mention of the laying of electric lines. *311 The jury filled in both verdict sheets. Respondent’s completed verdict sheet held that there was a necessity for the laying of the road requested by respondent and included the installation of an underground electric line. Petitioner’s held simply that the opening of the requested road was necessary. The jury voted 11 “yes” and one “no.” Such is revealed on both verdict sheets. As the jury filled out both verdict sheets consistently, it is obvious that the jury was not confused by respondent’s addition of the language regarding underground electric lines.
This court finds the inclusion, by respondent, of the language regarding electric lines on its verdict sheet to have been improper and unauthorized. That part of the verdict will be vacated, as discussed above. This court further finds that the inclusion of this language, though improper, has resulted in absolutely no prejudice to petitioner. This prong of petitioner’s motion will be denied.
c. Respondent Improperly Amended Its Highway Law Application by Changing the Length of the Private Road
The application submitted by respondent indicated that the private road at issue was to be 50 feet wide by 400 feet long. Just prior to closing arguments, respondent amended its application by extending the length of the desired private road. Petitioner claims respondent had no right to do so and that petitioner was materially prejudiced by the amendment.
Respondent argues, persuasively, that the amendment was proper. Respondent states that the application referred to the existing location of the Lake Simond Road Extension crossing of the Road Parcel and the dimensions given of 50 feet by 400 feet were based upon the language in prior deeds. In addition, respondent points to the fact that prior to trial it was denied access to the site at issue. This, of course, limited respondent’s ability to be any more precise in the description of the road in the application. At trial, it was revealed that there is a curve in the road in the existing crossing which, in turn, would require that the requested private road be longer than 400 hundred feet. As such, respondent amended its application to reflect this evidence which arose from the trial proof.
Simply put, this court finds no error. Petitioner is hard pressed to show that it was prejudiced in any way by the amendment. In fact, it certainly appears that petitioner itself must have been privy to the fact that the original request for a 400-foot-long private road would be insufficient to traverse the parcel before it ever became obvious to respondent at trial.
*312 Respondent was as precise as possible in drafting its application, given the circumstances. “The purpose of the description requirement is to enable the owner to know what portion of his lands it is the [respondent’s] intention to acquire” (Matter of Pratt v Allen, 116 Mise 2d 244, 248 [1982]). The application was proper and served its purpose in providing the petitioner with sufficient notice of the location of the desired road. In turn, the amendment was necessary and appropriate and little different from the familiar motion to conform the pleadings to the proof prior to jury submission at the conclusion of a traditional civil trial.
Now, therefore, it is hereby ordered that the petitioner’s motion be, and the same hereby is, granted in part and denied in part; and it is further ordered that the respondent’s cross motion be, and the same hereby is, granted in part and denied in part; and it is further ordered that that part of petitioner’s application in this proceeding which is denominated an “appeal” be, and the same hereby is, dismissed; and it is further ordered that that part of the jury’s verdict in this matter which granted respondent the right “to install an underground electric line within five (5) feet of the edge of the gravel road” be, and the same hereby is, vacated; and it is further ordered that every other provision of the jury’s verdict in this matter be, and the same hereby is, confirmed.

. In fact, in nearly a quarter century, this court has encountered such a proceeding only once before but also involving land in the Town of Tupper Lake, then known as the Town of Altamont (see Matter of Iron Mtn. Forestry, Inc. v Friedman, 33 Misc 3d 1227[A], 1998 NY Slip Op 50002[U] [Franklin County Ct, Apr. 7, 1998, Main, Jr., J.]). Because of the paucity of guidance available to courts in the statute itself and from reported case law, this decision and order, and the earlier one just referenced, will be submitted to the State Reporter.